**INDUSTRIAL COGENERATORS, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Florida Power Corporation; Florida Public Service Commission, Intervenors.

No. 93–1372.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1994.

Decided March 7, 1995.

**1232**

Harvey L. Reiter argued the cause for petitioner. With him on the briefs was Kathleen L. Mazure.

Edward S. Geldermann, Attorney, F.E.R.C., argued the cause for respondent. With him on the brief was Jerome M. Feit, Sol., F.E.R.C.

Before EDWARDS, Chief Judge, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Industrial Cogenerators (IC), an ad hoc group of industrial firms engaged in the cogeneration of electric power in the State of Florida, petitions for review of an order of the Federal Energy Regulatory Commission vacating an earlier declaratory order in which the agency had interpreted certain of its own regulations implementing § 210(a) of the Public Utility Regulatory Policies Act of 1978 (PURPA). 16 U.S.C. § 824a–3(a). The order that IC asks us to review is inextricably tied to an enforcement scheme over which the Congress has vested exclusive jurisdiction in the federal district courts. Therefore, we lack jurisdiction to review the order, and we dismiss the petition.

## I. BACKGROUND

Section 210 of the PURPA was enacted, in part, to address discrimination by electric utilities in the availability and price of power that they sell to and buy from cogeneration facilities for resale. *See F.E.R.C. v. Mississippi*, 456 U.S. 742, 750–51, 102 S.Ct. 2126, 2132–33, 72 L.Ed.2d 532 (1982). The FERC implements § 210 by promulgating rules designed to encourage cogeneration and small power production, 16 U.S.C. § 824a–3(a)–(c); those rules are in turn implemented by state regulatory authorities and by "each nonregulated electric utility." 16 U.S.C. § 824a–3(f). If an entity of either type fails to implement the FERC rules, then the Commission may, upon its own motion or upon petition, bring an enforcement action in district court to ensure compliance with the Act; if the Commission fails to act upon a petition for enforcement, then the petitioner may itself bring such an action. 16 U.S.C. § 824a–3(h)(2)(B). The PURPA does not provide any other means by which the FERC or a petitioner can force a state regulatory authority or a nonregulated utility to comply with § 210 of the Act.

In February 1987 the Florida Public Service Commission (FPSC) adopted *Order 17159, Generic Investigation of Standby Rates for Electric Utilities,* 87 F.P.S.C. 2:43, purportedly implementing the FERC's regulation of the rates an electric utility may charge a cogeneration facility for power, 18 C.F.R. § 292.305. Industrial Cogenerators challenged *Order No. 17159* in two different fora. First, it filed a notice of appeal with the Supreme Court of Florida, arguing that *Order No. 17159* is inconsistent with Florida law. Second, IC petitioned the Commission to bring an enforcement action against the

FPSC, or in the alternative to grant it declaratory relief, on the grounds that *Order No. 17159* is inconsistent with both the PURPA and the FERC's rate regulation, 18 C.F.R. § 292.305, because it unfairly burdens cogeneration facilities and impermissibly restricts the circumstances under which electric utilities must provide service to them. The FPSC intervened in the FERC proceeding.

In June 1988 the FERC declined to initiate an enforcement action against the FPSC, but it did issue a "Declaratory Order" in which it opined that any enforcement action should proceed "in the appropriate judicial forum." Observing that IC's complaint raised issues that were "primarily factual," the Commission suggested that the Supreme Court of Florida would be a better forum for factual development. *Industrial Cogenerators v. Florida Public Serv. Comm'n*, 43 F.E.R.C. ¶ 61,545 (1988). In order to "supply the relevant state or federal court with guidance as to the legal requirements of [its] regulations, and thus to aid the court's review of the Florida PSC's action," the FERC interpreted its own regulations. The Commission also suggested that, depending upon the resolution of particular factual issues on the record before the FPSC, *Order No. 17159* may not have complied with those regulations. *Id.* at 62,346.

IC and the FPSC both filed petitions for rehearing: IC disputed the FERC's conclusion that the Supreme Court of Florida was the appropriate forum for fact-finding; the FPSC wanted the FERC to reconsider its interpretations of its own regulations. While the petitions for reconsideration were pending, the Supreme Court of Florida affirmed *Order No. 17159,* holding that it was not inconsistent with Florida law. *C.F. Industries, Inc. v. Nichols*, 536 So.2d 234 (Fla. 1988). And there the matter stood for nearly three years. Then the FPSC adopted *Order No. 24924*, 91 F.P.S.C. 8:207 (August 19, 1991), in which it stated "its intent to address the criteria under 18 C.F.R. § 292.305(b)(2) ... in each utility's next rate case," and revised its rules to require that an electric utility's provision of certain services to co-

generation facilities "shall be consistent with the [FERC] rule, 18 C.F.R. Sec. 292.305."

In November 1992 the FERC, referring to the intervening decisions of the Supreme Court of Florida affirming *Order 17159* and of the FPSC adopting *Order No. 24924*, vacated the Declaratory Order on the ground that the underlying dispute had become moot, *Industrial Cogenerators v. Florida Public Serv. Comm'n*, 61 F.E.R.C. ¶ 61,202 (1992). In this "Vacating Order" the Commission noted that it had erred in the Declaratory Order insofar as it had suggested that the Supreme Court of Florida is the preferable fact-finding body; the FERC had intended to defer to the FPSC as the more appropriate forum for development of the record. *Id.* at 61,753. The FERC having thus denied the petition for rehearing, 63 F.E.R.C. ¶ 61,-168 (1993), IC petitioned this court for review of the Vacating Order.

## II. ANALSYIS

The petitioner argues first that the state law decision of the Supreme Court of Florida in *C.F. Industries* did nothing to moot its challenge to the validity of *Order No. 17159* under federal law, and second that the FPSC's *Order No. 24924* did not bring that agency's regulatory scheme into compliance with the PURPA and the FERC's implementing regulations. IC therefore asks this court to find that the FERC abused its discretion when it vacated the Declaratory Order as moot.

In response, the FERC challenges our jurisdiction over IC's petition for review. For the reasons set out in Part II.B below, we agree that we do not have such jurisdiction.

### A. *The Jurisdictional Arguments*

■ The petitioner contends that this court has jurisdiction to review the Vacating Order under § 313(b) of the Federal Power Act. As it appears in the U.S.Code, that section provides:

Any party to a proceeding under this *chapter* aggrieved by an order issued by [the FERC] in such proceeding may obtain a review of such order in ... the United

States Court of Appeals for the District of Columbia. . . .

16 U.S.C. § 825*l* (b) (emphasis added).

The FERC, however, points out that in the Statutes at Large the word "Act" stands in place of the word "chapter," 49 Stat. 860 (1935), and that as between the statute as enacted and as codified, the former is controlling. *See* 1 U.S.C. §§ 112, 204(a); *Five Flags Pipe Line Co. v. Department of Transp.*, 854 F.2d 1438, 1440–41 (D.C.Cir. 1988). Further, according to the FERC, the "Act" referenced in § 313(b) as enacted is the FPA, not the PURPA; the Vacating Order (like the Declaratory Order) was issued under § 210 of the PURPA; and therefore § 313(b) does not give this court jurisdiction to review the order that IC is challenging. Instead, the FERC contends, judicial review of any order issued under § 210 may be had only by bringing an enforcement action pursuant to § 210(h).

Alternatively, the FERC argues that even if § 313(b) of the FPA does apply to orders issued under the PURPA, we do not have jurisdiction of this case, both because the petitioner is not a party "aggrieved" by the Vacating Order, *see North Carolina Utilities Commission v. F.E.R.C.*, 653 F.2d 655, 662 (D.C.Cir.1981) ("To show aggrievement, a plaintiff must allege facts sufficient to prove the existence of a concrete, perceptible harm of a real, non-speculative nature"), and because the Order is not "final" for the purpose of judicial review, *see Papago Tribal Utility Authority v. F.E.R.C.*, 628 F.2d 235, 239–40 (D.C.Cir.1980) (only FERC order that "imposes an obligation, denies a right, or fixes some legal relationship as a consummation of the administrative process" is "final" for purpose of judicial review). Finally, the FERC portrays the Vacating Order as a discretionary decision not to take enforcement action, hence unreviewable per the teaching of *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985).

We find it unnecessary to reach any of these specific jurisdictional arguments. Regardless of whether the Congress in § 313(b) authorized us to review any orders issued under § 210 of the PURPA, it could not have intended that such review be available where it would disrupt the enforcement scheme carefully elaborated in § 210. For us to review the Vacating Order (and indirectly the Declaratory Order to which it relates), however, would be fundamentally inconsistent with—would indeed preempt—that enforcement scheme.

### B.  *The Enforcement Scheme*

Section 210 creates an enforcement scheme by which either the FERC or a private party may see to it that a state regulatory commission or an unregulated utility complies with the PURPA. *See* 16 U.S.C. § 824a–3(h). The FERC can initiate an enforcement action either upon its own motion or upon the petition of a private party. 16 U.S.C. §§ 824a–3(h)(2)(A), (B). If the agency does not initiate an enforcement action within 60 days of such a petition, then the petitioning party may itself do so. 16 U.S.C. § 824a–3(h)(2)(B). In either event, the enforcement action must be brought in federal district court. *See* 16 U.S.C. §§ 824a–3(h)(1), (2)(A) (for purpose of enforcement, rule implementing PURPA "shall be treated as a rule under the [FPA]"); 16 U.S.C. § 825m(a) (FERC action to enforce FPA lies in district court); 16 U.S.C. § 825p (district courts have exclusive jurisdiction of actions to enforce FPA); *and* 16 U.S.C. § 824a–3(h)(2)(B) (district court is forum for action initiated by private party). The decision of the district court is reviewable in the court of appeals in the ordinary course.

The district court's jurisdiction over actions to enforce the PURPA precludes review of the Vacating Order in the court of appeals. Neither the Vacating Order nor the underlying Declaratory Order has any effect outside the context of an enforcement action—which IC could have brought but chose not to pursue. Neither order fixes the rights of any party or, indeed, does anything more than state how the FERC interprets its own regulations. Pre-enforcement review, therefore, would both fragment and disrupt the enforcement process that the Congress specifically provided in § 210.

Consider the Declaratory Order first. Except that a private party bringing an enforcement action in district court might seek to

introduce the Declaratory Order in order to show that the FERC supported its position, the Order was of no legal moment. The Commission nowhere purported to make the Declaratory Order binding upon the FPSC, nor can we imagine how it could do so. Unlike the declaratory order of a court, which does fix the rights of the parties, this Declaratory Order merely advised the parties of the Commission's position. It was much like a memorandum of law prepared by the FERC staff in anticipation of a possible enforcement action; the only difference is that the Commission itself formally used the document as its own statement of position. While such knowledge of the FERC's position might affect the conduct of the parties, the Declaratory Order is legally ineffectual apart from its ability to persuade (or to command the deference of) a court that might later have been called upon to interpret the Act and the agency's regulations in an private enforcement action; and because that could only be a district court, this court cannot have pre-enforcement jurisdiction to review the Declaratory Order.

■ Now consider the Vacating Order: it does nothing more than withdraw the ineffectual Declaratory Order. This court certainly cannot undertake to review the Commission's decision, upon reconsideration, not to announce its views after all. We have no jurisdiction to review an agency's prelitigation statement of position, *cf. National Wildlife Federation v. Lujan*, 733 F.Supp. 419, 433–34 (D.D.C.1990) (court cannot review, for consistency with statutory scheme, position taken by agency in footnote to brief submitted in different case), *reversed on other grounds, National Wildlife Federation v. Lujan*, 928 F.2d 453 (D.C.Cir.1991), much less a decision by the FERC not to adhere to that position. Were we to do so, our decision would as a practical matter usurp the role of the district court as the court of first instance, contrary to the enforcement scheme adopted by the Congress in § 210(h) of the PURPA.

Finally, consider what might happen if we did have jurisdiction to review the Commission's pre-enforcement position applying § 210, and the shoe were on the other foot, as it were. When the FERC issued the Declaratory Order but declined to file suit, IC could have brought its own enforcement action against the FPSC in the district court in Florida. Had the FPSC then sought review of the Declaratory Order here (or for that matter in the Eleventh Circuit), the court of appeals would be required to review the merits of the very position upon which IC would be relying in its district court case. Presumably IC would then resist our jurisdiction; for an adverse ruling here would preclude its relitigation of the same issue, upon a fuller record, in IC's forum of choice.

IC points out, however, that § 210(h)(2) is an "enforcement provision" rather than a "review provision," implying that the Declaratory Order (and the Vacating Order) would not actually be under review in the context of an enforcement action. That is technically true, but irrelevant. The substance of the position that the FERC took in the Declaratory Order would necessarily be at issue in an enforcement action, whether the FERC or a private party is the plaintiff.

Apparently without any sense of irony, the petitioner urges this court to review the Vacating Order in order to avoid "a fragmented and arbitrary review process." Thus, quoting *Texaco, Inc. v. Chandler*, 354 F.2d 655, 657 (10th Cir.1965), IC urges us to assert our "inherent powers of appellate jurisdiction, 'to effectuate what seems . . . to be the manifest ends of justice.'" Even if this court were free to assert itself in derogation of the scheme established by the Congress—and it is not—we would think it obvious that the district court is the superior forum in which to address the question whether the FPSC is in violation of any FERC regulation. That is apparently a fact-specific inquiry; recall that the FERC declined to initiate an enforcement action because it could not resolve certain disputed questions of fact without a more complete record, *see Industrial Cogenerators v. Florida Public Serv. Comm'n*, 43 F.E.R.C. ¶ 61,545 at 62,346 (1988). The "ends of justice" are not likely to be served by judicial review based upon an inadequate record.

In sum, the Congress created in § 210 a complete and independent scheme by which

the purposes of the PURPA are to be realized. That scheme involves the promulgation of regulations by the FERC, and their subsequent enforcement exclusively in federal district court, at the insistence of either a private party or of the FERC itself. Because the Vacating Order cannot be divorced from that enforcement process, the court of appeals cannot entertain the present petition for review.

## C. *The Scope of Our Decision*

We do not reach, and expressly reserve, the question whether this court would have jurisdiction to review an order promulgated by the FERC under § 210 of PURPA that is not as closely related to the enforcement scheme as is the Vacating Order. Our review of an order embodying, for example, a rule of general application, not tied to a particular set of facts potentially subject to the statutory enforcement scheme, would not necessarily be inconsistent with § 210—although it might still run afoul of one of the jurisdictional objections that the FERC has raised in this case. Indeed, the FERC itself appears to be of two minds about whether such an order would be reviewable. *Compare Order No. 69, Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Util-*

*ity Regulatory Policies Act of 1978,* FERC Stats. & Regs. [1977–1981 Regulations Preambles] ¶ 30,128, *order on reh'g,* FERC Stats. & Regs., [Regulations Preambles 1977–1981] ¶ 30,160, at 31,107 n. 2 (1980) (§ 210 incorporates rehearing and judicial review provisions of FPA, so that review of orders would be in court of appeals); *with Order No. 550–A,* FERC Stats. & Regs. [Regulations Preambles] ¶ 30,969 (1993) (adopting position that any order issued under § 210 of PURPA is reviewable in court of appeals only insofar as it is intertwined with issues arising under FPA).

### III. Conclusion

For the foregoing reasons, we hold that this court does not have jurisdiction to review the Vacating Order here challenged by the petitioners. Accordingly, the petition for review is

*Dismissed.*