MASSACHUSETTS INSTITUTE OF
TECHNOLOGY, Plaintiff,

v.

MASSACHUSETTS DEPARTMENT OF
PUBLIC UTILITIES, Mary C. Webster,
Janet G. Besser, John Howe, Timothy
Shevlin, Jr., and Cambridge Electric
Light Company, Defendants.

Civil Action No. 96–11044–RCL.

United States District Court,
D. Massachusetts.

Aug. 27, 1996.

**234**

Alan K. Posner, Rubin & Rudman, Boston, MA, Sara D. Schotland, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, for Plaintiff.

H. Reed Witherby, Boston, MA, for Defendants.

Paul F. Denver, Rossman, Rossman & Eschelbacher, Boston, MA, for the American Forest & Paper Institute ("AF & PA").

Paul F. Denver, Rossman, Rossman & Eschelbacher, Boston, MA, for Industrial Consumers, "AMOCO", Atlantic Richfield, Co., Chevron Corporation, Electricity Consumers Resource Council ("ELCON"), American Iron and Steel Institute ("AISI"), Ch mical Manufacturers Association ("CMA"), Council of Industrial Boiler Owners ("CIBO"), the American Forest & Paper Institute ("AF & PA"), Amici.

David S. Rosenzweig, Stephen H. August, Keohane & Keegan, Boston, MA, Joseph M. Oliver, Jr., Amy J. Mauser, Crowell & Moring, Washington, DC, for Cambridge Electric Light Co.

*OPINION*

LINDSAY, District Judge.

The plaintiff, Massachusetts Institute of Technology ("MIT") brings this claim against the Massachusetts Department of Public Utilities and certain of its officials (collectively referred to hereinafter as "MDPU") and Cambridge Electric Light Company ("Cambridge Electric"), alleging that the MDPU's approval of Cambridge Electric's stranded cost recovery charges to MIT violates the Public Utility Regulatory Policies Act of 1978 ("PURPA"). MDPU moves to dismiss the complaint on the ground that this court lacks subject matter jurisdiction or, in the alternative, that the Eleventh Amendment precludes this action. Cambridge Electric moves to dismiss the complaint on the ground that this court lacks subject matter jurisdiction. All of the defendants contend, as an alternative to their jurisdictional arguments, that if the court concludes that it has jurisdiction, it should nevertheless abstain under either the *Younger* or *Burford* doctrine. (MDPU also argues that abstention is appropriate under the *Colorado River* abstention doctrine.) The defendants also contend that the amended complaint fails to state a claim upon which relief can be granted.

For the reasons set forth below, the court concludes that there is no subject-matter jurisdiction over MIT's claim. Therefore, the defendants' motions to dismiss are GRANTED.

I. *Facts*

The following statement of facts, extracted from the various papers filed by the parties, does not appear to be in dispute.

Cambridge Electric is a public utility, regulated by MDPU and engaged in the production, distribution and sale of electricity in Cambridge, Massachusetts.

MIT historically has been one of Cambridge Electric's largest all-requirements retail customers for electric service. In September, 1995, MIT completed construction of its own electricity-generating plant and began producing sufficient electricity to meet most of its requirements. With construction of this facility, known as a cogeneration

plant, MIT was designated a "qualifying facility" ("QF") under PURPA.[1]

In May, 1994, before construction had been completed on the plant, MIT petitioned MDPU to establish rates for services that MIT would still require from Cambridge Electric, namely standby, maintenance, and supplemental service. For its part, Cambridge Electric proposed a new "Customer Transition Charge" ("CTC") which it proposed to apply to all former all-requirements customers that turned to alternate sources for their power needs. The CTC was designed to cover Cambridge Electric's "stranded costs"—that is, the investment in existing facilities which may be unrecovered when a customer discontinues all-requirement purchases of power. As proposed, the CTC applied to any customer above a specified demand level that ceased to be an all-requirements customer. Although there are seven customers of Cambridge Electric that conceivably could fall into the category defined for the CTC, only MIT currently is affected by the charge.

The MDPU held hearings on MIT's petition and Cambridge Electric's proposed rates and charges and, in an order issued September 29, 1995, approved the CTC with a slight variation. *In re Cambridge Electric Light Co.*, 164 PUR 4th 69, 1995 WL 634599 (Mass. D.P.U.1995). MIT appealed the MDPU order to the Supreme Judicial Court of Massachusetts in October, 1995. The appeal challenges, among other things, the propriety of the CTC. As of this writing, the appeal is still pending before the Supreme Judicial Court.

Section 210(a) (16 U.S.C. § 824a–3(a)) of PURPA requires the Federal Energy Regulatory Commission ("FERC") to prescribe rules for the encouragement of cogeneration and small power production. Section 210(f) of the Act (16 U.S.C. § 824a–3(f)) requires state regulatory authorities and nonregulated electric utilities to implement the rules prescribed by FERC. Section 210(h) of the Act (16 U.S.C. § 824a–3(h)) provides that, if a state regulatory authority or a nonregulated electric utility fails to implement FERC's rules, FERC may institute an enforcement action. Section 210(h) also permits a QF to petition FERC to initiate an enforcement action; and if FERC fails to do so within sixty days of the filing of the petition, the section provides that the QF may bring an action in a federal district court to require the recalcitrant state authority or nonregulated electric utility to comply with Section 210(f)'s requirement that FERC's rules be implemented. In this case, the particular FERC rule that MIT claims MDPU has failed to implement is set forth at 18 C.F.R. § 292.305. It requires that rates established for QFs "(i) [s]hall be just and reasonable and in the public interest; and (ii) [s]hall not discriminate against any qualifying facility in comparison to rates for sales to other customers served by the electric utility." 18 C.F.R. § 292.305(a)(1).

As a QF, therefore, MIT has a statutory right to request enforcement of § 210(f) by FERC and to petition a federal district court for such enforcement if FERC declines to bring an enforcement action. This is what MIT has done in this case.

On January 5, 1996, MIT petitioned FERC to enforce § 210(f) against MDPU. MIT argued in its petition that the MDPU order approving the CTC, among other things, is inconsistent with PURPA's goal of encouraging non-utility electric generation. FERC disagreed and refused to bring an enforcement action. *Massachusetts Institute of Technology*, 74 FERC 61,221 (February 29, 1996). MIT now asks this court to require MDPU to implement FERC's rules by prohibiting the collection of the CTC.

## II. *Applicable Statutes*

16 U.S.C. § 824a–3(a):

Not later than 1 year after November 9, 1978, the [Federal Energy Regulatory] Commission shall prescribe, and from time to time thereafter revise, such rules as it determines necessary to encourage cogeneration and small power production, ... which rules require electric utilities to offer to—

---

1. To be a QF for PURPA, a cogeneration plant must meet the requirements set forth at 18 C.F.R. § 292.203 and must successfully apply for QF status as delineated in 18 C.F.R. § 292.207.

(1) sell electric energy to qualifying cogeneration facilities . . .

(2) purchase electric energy from such facilities.

Such rules shall be prescribed, after consultation with representatives of Federal and State regulatory agencies having ratemaking authority for electric utilities, and after public notice and a reasonable opportunity for interested persons . . . to submit oral as well as written data, views, and arguments. . . .

16 U.S.C. § 824a–3(f):

(1) Beginning on or before the date one year after any rule is prescribed by the Commission under subsection (a) of this section or revised under such subsection, each State regulatory authority shall, after notice and opportunity for public hearing, implement such rule (or revised rule) for each electric utility for which it has ratemaking authority.

16 U.S.C. § 824a–3(h):

(2)(A) The Commission may enforce the requirements of subsection (f) of this section against any State regulatory authority or nonregulated electric utility. . . .

(B) Any electric utility, qualifying cogenerator, or qualifying small power producer may petition the Commission to enforce the requirements of subsection (f) of this section as provided in subparagraph (A) of this paragraph. If the Commission does not initiate an enforcement action under subparagraph (A) against a State regulatory authority or nonregulated electric utility within 60 days following the date on which a petition is filed under this subparagraph with respect to such authority, the petitioner may bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements, and such court may issue such injunctive or other relief as may be appropriate. . . .

III. *Analysis: Jurisdiction under § 210(h) of PURPA*

As is clear from reading the statutory excerpts above, the United States district courts have limited jurisdiction over plaintiffs' claims to enforce the requirements of rules promulgated by FERC under PURPA. Specifically, a district court, upon petition of an "electric utility, qualifying cogenerator, or qualifying small power producer," may "require [a] State regulatory authority or nonregulated electric utility to comply with" the requirements of subsection (f) of § 210 of PURPA. 16 U.S.C. § 824a–3(h). The district court is vested with this enforcement authority only if, after sixty days, FERC declines to bring an enforcement action against a noncomplying state regulatory authority or nonregulated utility. *Id.* In this case, this particular jurisdictional requirement has been met: MIT petitioned FERC to bring an enforcement action against MDPU and FERC declined to do so. *Massachusetts Institute of Technology*, 74 FERC 61,221 (February 29, 1996).

At oral argument, MIT identified the regulation at 18 C.F.R. § 292.305 as the FERC rule as to which MDPU has defaulted. This rule provides that rates established for QFs "(i) [s]hall be just and reasonable and in the public interest; and (ii) [s]hall not discriminate against any qualifying facility in comparison to rates for sales to other customers served by the electric utility." 18 C.F.R. § 292.305(a)(1). This particular regulation was not addressed in the MDPU proceeding; nor was it mentioned in the FERC proceeding. In its ruling on the imposition of the CTC, MDPU made no reference to any particular FERC rule, justifying its imposition of the CTC instead under various state laws. *In re Cambridge Electric Light Co.*, 164 PUR 4th 69, 77, 1995 WL 634599 (Mass.D.P.U. 1995). Similarly, the FERC decision makes no reference to any specific FERC rule from which the MDPU decision regarding the imposition of a CTC on MIT is alleged to follow. *Massachusetts Institute of Technology*, 74 FERC 61,221 (February 29, 1996).

■ Cases interpreting the jurisdictional grant in § 210(h) of PURPA have distinguished between claims challenging the implementation of FERC/state agency regulations and claims challenging the application of such regulations. *E.g., Indus. Cogenerators v. FERC*, 47 F.3d 1231 (D.C.Cir.1995);

*Greensboro Lumber Co. v. Georgia Power Co.*, 643 F.Supp. 1345. (N.D.Ga.1986), aff'd. 844 F.2d 1538 (11th Cir.1988). As explained in *Greensboro Lumber*, "In general, section 210(h)(2)(B) of PURPA limits federal court jurisdiction to claims that nonregulated utilities [and state agencies] ... have failed to comply with their obligation under § 210(f)(2) of PURPA to devise an implementation plan, after notice and opportunity for public hearing, that is consistent on its face with FERC's regulations." *Greensboro Lumber*, 643 F.Supp. at 1374.

FERC itself has also spoken on the meaning of "implementation" under § 210(h). In 1983, FERC issued a statement explaining its view of § 210(h) and its enforcement policies with regard to that section. *Policy Statement Regarding the Commission's Enforcement Role Under Section 210 of the Public Utility Regulatory Policies Act of 1978*, 23 FERC 61,304 (May 31, 1983), 1983 WL 39627 ("FERC Policy Statement"). In the FERC Policy Statement, FERC clarified that a state regulatory authority's obligation under § 210(f) of PURPA—that is, a state regulatory authority's obligation to implement—

> may be fulfilled either: 1) through the enactment of laws or regulations at the State level; 2) by application on a case-by-case basis by the State regulatory authority ... of the rules adopted by the [Federal Energy Regulatory] Commission; or, 3) by any other action reasonably designed to implement the Commission's rules.

*Id.* at *1.

In this case, the state agency—MDPU—has devised an implementation plan. It follows that MDPU has fulfilled its obligation to implement, as defined in the FERC opinion, because MDPU has "enact[ed] laws or regulations at the State level." *FERC Policy Statement* at *1. Therefore, any challenge MIT raises must be to the lawfulness of the regulations as implemented. At oral argument, MIT confirmed that this is, indeed, the nature of its claim. MIT may raise such a challenge; as FERC explained the purview of § 210(h)(2)(A), FERC "authority under this subsection extends to situations where State regulatory authorities ... are alleged to have completed the implementation process, but have promulgated regulations which are inconsistent with or contrary to the Commission's regulations." *FERC Policy Statement* at *2. In this case, MIT alleges that the CTC, applied to a QF, is in "direct contravention of the express intent of PURPA." Memorandum in Support of Motion of MIT for Preliminary Injunction at 2 [2].

In considering MIT's claim, this court is mindful of the dichotomy between implementation claims and as-applied claims, as defined in the caselaw. An implementation claim, as explained above, involves a contention that the state agency has failed to implement a lawful implementation plan under § 210(f) of PURPA. An as-applied claim, in contrast, involves a contention that the agency's implementation plan is unlawful, as it applies to or affects an individual petitioner. *See Greensboro Lumber*, 643 F.Supp. at 1374. Because the jurisdictional grant in § 210(h) of PURPA extends only to cases in which a federal court is asked to require a state agency or nonregulated electric utility to implement, federal courts have refused to hear as-applied claims. *Greensboro Lumber*, 643 F.Supp. at 1374; FERC Policy Statement, passim.

MIT's claim admittedly presents a closer case than did *Greensboro Lumber*, which this court would characterize as a "pure" as-applied claim. In that case, the QF, Greensboro, challenged the defendants' implementation plan, claiming that the rates established by the plan were not "non-discriminatory,

---

**2.** This court is not in the usual *Chevron* posture of reviewing the reasonableness of an agency determination on appeal. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). In this case, the court is not asked to consider FERC's interpretation of MIT's claim under PURPA; instead, the court is to determine independently whether PURPA vests jurisdiction in this court under these circumstances. The court concludes, however, that the *Chevron* teaching—that is, that an agency's interpretation of its own regulations should be accorded deference unless clearly erroneous—still carries some weight in these circumstances, and notes that FERC has approved the CTC as not inconsistent with its regulations. *Massachusetts Institute of Technology*, 74 FERC 61,221.

just and reasonable" as required by 18 C.F.R. § 292.305. The district court concluded that this claim was properly regarded as a challenge to the application of an implemented plan, and not a challenge to the implementation of the plan itself; therefore, the court concluded, jurisdiction did not lie in federal court. *Id.* at 1374–75.

The claim before this court is not so obviously an as-applied claim; but after considering the facts, as advanced by the nonmoving party, MIT, this court concludes that the claim is properly characterized as "as-applied." The parties do not dispute that the challenged charge, the CTC, is imposed on a particular class of customers, as defined by Cambridge Electric. As MDPU explained, "The CTC ... is based on consistent system-wide costing principles that apply to all large customers in the load at risk class. The CTC applies equally to all class customers, whether QF or not." *In re Cambridge Electric Light Co.*, 164 PUR 4th at 103, 1995 WL 634599. It is also undisputed that, as of this time, MIT is the only customer in that class which is subject to the CTC. The difference between MIT and the other six customers in that class is that MIT's power requirements have lessened considerably, triggering the imposition of the CTC, while those of the other six customers have not.

That MIT's claim is an as-applied claim becomes clear when one focuses on this difference. Assume for a moment that one of the other six customers in the class experiences a precipitous drop in the power it requires from Cambridge Electric. Assume, further, that this drop is caused by that customer's self-generation, but that the customer is not a QF under PURPA. The CTC would still apply to that hypothetical other customer, just as it applies to MIT. MIT's claim, however, would remain the same: that MIT, *as a QF*, should be immune to the CTC. In other words, MIT's claim is that the CTC, *as applied* to MIT, violates PURPA.

Because the court concludes that MIT's claim is properly interpreted as a disagree-

ment regarding the application of Cambridge Electric's CTC, this court has no jurisdiction over MIT's claim.[3] 16 U.S.C. § 824a–3(h). Therefore, the defendants' motions to dismiss are GRANTED.

So ordered.

---

**3.** In light of this conclusion, it is unnecessary for the court to address the arguments the defendants make concerning Eleventh Amendment preclusion of this action against MDPU, abstention and failure of this complaint to state a claim.