# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 7, 2014          Decided December 2, 2014

No. 13-1184

MIDLAND POWER COOPERATIVE AND NATIONAL RURAL
ELECTRIC COOPERATIVE ASSOCIATION,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*William D. DeGrandis* argued the cause for petitioners. With him on the briefs were *Charles A. Patrizia*, *Stephen B. Kinnaird*, *Candice Castaneda*, *Jay A. Morrison*, and *Pamela Silberstein*.

*Holly Rachel Smith* argued the cause for petitioner-intervenors Iowa Utilities Board and National Association of Regulatory Utility Commissioners. With her on the brief were *James Bradford Ramsay* and *David J. Lynch*.

*Lisa B. Luftig*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, Acting General Counsel, and *Robert H. Solomon*, Solicitor.

*Sean A. Minahan* was on the brief for respondent-intervenors Gregory Swecker and Beverly Swecker. *Robert P. Trout* entered an appearance.

Before: GARLAND, *Chief Judge*, GRIFFITH, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: The Federal Energy Regulatory Commission issued an order directing Midland Power Cooperative, an Iowa electric utility, to "reconnect" to a wind generator within its territory. *Swecker v. Midland Power Cooperative*, 137 FERC ¶ 61,200 (2011) ("Order"). It denied Midland's petition for rehearing. *Swecker v. Midland Power Cooperative*, 142 FERC ¶ 61,207 (2013) ("Order on Rehearing"). Midland and joint petitioner National Rural Electric Cooperative Association ("NRECA") seek review. The first question, and as it proves the last, is whether we have jurisdiction. The answer is that we do not.

* * *

The orders under review arise out of a prolonged dispute between Gregory and Beverly Swecker and Midland. The Sweckers own and operate on their Iowa farm a 65kW wind generator that is classified as a qualifying facility ("QF") under § 210 of the Public Utility Regulatory Policies Act of 1978 ("PURPA"), Pub. L. 95-617, 92 Stat. 3144 (codified at 16 U.S.C. § 824a-3). QFs comprise cogenerators (which produce both electricity and steam or some other form of useful energy) and "small power production facilit[ies]" (which have a production capacity of no more than 80 megawatts and rely on various forms of renewable resources). 16 U.S.C. §§ 796(18)(A), 796(17)(A); see also *FERC v.*

3

*Mississippi*, 456 U.S. 742, 750 & n.11 (1982). Congress believed that the development of such facilities had been impeded by the reluctance of traditional electric utilities to purchase from and sell to them, and by the financial burden imposed on such facilities by state and federal regulation. Through § 210 it authorized FERC to promulgate rules requiring utilities to purchase from and sell to such QFs. *Id*. at 750-51. The rates to be prescribed by FERC for utilities' purchases were not to exceed "the incremental cost to the electric utility of alternative electric energy," § 210(b), or so-called "avoided cost," 18 C.F.R. § 292.304(b)(2).

Section 210 and the ensuing regulatory scheme require Midland to be ready to purchase power from the Sweckers' QF and also to supply them with retail power. The parties have long fought over the proper calculation of "avoided cost." The Sweckers, in response to Midland's failure to pay what they view as the correct rate, stopped paying Midland for retail power. By the fall of 2011 they claimed that Midland owed them some $60,000 and acknowledged an accumulated unpaid bill from Midland of about $600. Their failure to pay the retail bill led Midland, after giving notice and securing the approval of the Iowa Utilities Board, to begin procedures to disconnect the Sweckers. As Midland's purchases from the Sweckers are effected through the same interconnection as its supply of retail power, the disconnection had the effect of ending Midland's purchases as well. The Sweckers filed notice of the disconnection with FERC and requested an expedited order of reconnection.

After various inconclusive actions, FERC issued the challenged Order, finding that Midland's cessation of sales, and of purchases (as a consequence of the disconnection), did not fall within any of the exemptions from these duties under § 210 or FERC's regulations. Despite that finding, FERC left open the question of a utility's ultimate right to disconnect on

account of non-payment. Order, 137 FERC ¶ 61,200, PP 29-39. It then declared: "The Commission orders: (A) Midland shall reconnect with the Sweckers' QF for purposes of purchasing and selling to the QF." It rejected the requests for rehearing filed by Midland, the Iowa Utilities Board, and NRECA, see Order on Rehearing, 142 FERC ¶ 61,207 (2013), and Midland and NRECA then filed this petition for review. (As used below, "Midland" refers to both petitioners except where the context indicates it means only the utility.)

* * *

Midland naturally contends we have jurisdiction, and FERC appears to acquiesce (except for a claim that petitioners failed to "urge[]" the issues adequately in their petitions for rehearing, a claim we need not address). But we are, of course, obliged to address the question on our own. *Basardh v. Gates*, 545 F.3d 1068, 1070 n.1 (D.C. Cir. 2008).

There are two apparent avenues to our jurisdiction, the first one directly through the Federal Power Act's provision for review (§ 313(b) of the FPA, 16 U.S.C. § 825*l*(b)), the second via PURPA § 210's provision on "enforcement," 16 U.S.C. 824a-3(h), which is said by Midland to forge a link to § 313(b). We take the theories in that order.

Section 313(b) of the FPA reads as follows as it appears in the United States Code:

(b) Judicial review

Any party to a proceeding under this *chapter* aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located or has

its principal place of business, or in the United States Court of Appeals for the District of Columbia . . . .

FPA § 313(b), 16 U.S.C. § 825*l*(b) (emphasis added). Section 210 of PURPA is codified within the same chapter as § 313 (chapter 12 of title 16). Thus, at first glance, Midland appears to be the exact sort of party "aggrieved by an order" entitled to review in the court of appeals.

But as enacted in the Statutes at Large, § 313 uses the word "Act" where the codifiers used the word "chapter." See 49 Stat. 860 ("Any party to a proceeding under this Act aggrieved by an order . . ."). In cases, like this, where the two versions conflict, the rule is that the Statutes at Large version controls. "Though the United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' § 112 . . . ." *United States Nat'l Bank of Ore. v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 448 (1993). Section 210 of PURPA, unlike many other sections of PURPA, is neither a new section of the FPA nor an amendment of a pre-existing section. Compare, e.g., 92 Stat. 3144-47 (enacting § 210), with *id.* 3134-40, 3140-43 (enacting various PURPA sections that amend the FPA). Given that § 313 limits review to orders issued in proceedings under the Act—and § 210 is not part of the Act—Midland does not qualify as an "aggrieved party" vis-à-vis the challenged order (unless § 210 itself somehow changes the picture).

Midland suggests it does. Specifically, it argues that PURPA § 210(h) fits the orders here within the language of FPA § 313(b). Section 210(h) is complex and best seen as a whole:

(h) Commission enforcement

(1) For purposes of enforcement of any rule prescribed by the Commission under subsection (a) of this section with respect to any operations of an electric utility, a qualifying cogeneration facility or a qualifying small power production facility which are subject to the jurisdiction of the Commission under part II of the Federal Power Act [16 U.S.C. § 824 et seq.], such rule shall be treated as a rule under the Federal Power Act [16 U.S.C. § 791a et seq.]. . . .

(2)(A) The Commission may enforce the requirements of subsection (f) of this section against any State regulatory authority or nonregulated electric utility. For purposes of any such enforcement, the requirements of subsection (f)(1) of this section shall be treated as a rule enforceable under the Federal Power Act [16 U.S.C. § 791a et seq.]. For purposes of any such action, a State regulatory authority or nonregulated electric utility shall be treated as a person within the meaning of the Federal Power Act. No enforcement action may be brought by the Commission under this section other than—

> (i) an action against the State regulatory authority or nonregulated electric utility for failure to comply with the requirements of subsection (f) of this section or

> (ii) an action under paragraph (1).

(B) Any electric utility, qualifying cogenerator, or qualifying small power producer may petition the Commission to enforce the requirements of subsection (f) of this section as provided in subparagraph (A) of this paragraph. If the

> Commission does not initiate an enforcement action under subparagraph (A) against a State regulatory authority or nonregulated electric utility within 60 days following the date on which a petition is filed under this subparagraph with respect to such authority, the petitioner may bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with such requirements, and such court may issue such injunctive or other relief as may be appropriate. The Commission may intervene as a matter of right in any such action.

PURPA § 210(h), 16 U.S.C. § 824a-3(h).

Midland argues that the orders here "create new rules" regarding disconnections of retail service for customers' non-payment (and do so without using notice-and-comment rulemaking), and that they then purport to enforce these rules directly against Midland, "rather than bringing action in federal court as required" by § 210. Petitioners' Br. 5. Midland fits these acts into FPA § 313(b) by invoking § 210(h)(2)(A)'s provision that "the requirements of subsection (f)(1) of [§ 210] shall be treated as a rule enforceable under the Federal Power Act." *Id*. If FERC's orders put in issue the application of a "rule under the Federal Power Act," it argues, then FPA § 313(b) provides for review in the court of appeals.

There are several difficulties with this theory. An initial one is that § 210(f)(1) addresses only rules prescribed by the Commission relating to the implementation of § 210 by state regulatory authorities vis-à-vis any "electric utility for which it has ratemaking authority," and Midland is not such a utility. See Joint Appendix 12; Petitioners' Br. 14. Moreover, § 210(h)(2)(A) provides for treatment of § 210(f)(1)

requirements "as a rule enforceable under the Federal Power Act" "for purposes of enforcement." (Section 210(h)(1) uses a parallel construction.) In this context, where FERC is not seeking "enforcement" of the order, it appears irrelevant.

But most obviously fatal is that FERC never purported to adopt a general rule on disconnections by utilities whose customers refused to pay their bills (or conditioned payment of their bills on concessions regarding "avoided cost"). Midland cites no rule-creating language in either of the orders.

Rather than announcing a new general rule, FERC noted in its Order on Rehearing that the EPAct of 2005 had expanded its powers. Its most articulate explanation of its "reconnect" order reads as follows:

> Prior to the Commission's implementation of section 210(m) of PURPA, which was added to PURPA by EPAct 2005, the Commission, as Midland points out, in practice left issues regarding disconnection of QFs for nonpayment of bills to state regulatory authorities or nonregulated utilities. In implementing EPAct 2005, however, the Commission addressed, and provided specific regulations on, how an electric utility may terminate its obligations to purchase from and sell to QFs.

Order on Rehearing, 142 FERC ¶ 61,207 P 32.

It is true that the addition of subsection (m) to § 210 (via the EPAct of 2005) conferred on FERC new authority relating to the QFs that § 210 benefits. See, e.g., § 210(m)(3) (authorizing FERC review of utilities' applications for relief from mandatory purchase obligations on a territory-wide basis and allowing the Commission to "make a final determination" on whether applicant met the specified conditions); § 210(m)(4) (stating that FERC "shall issue an order"

reinstating an obligation to purchase under specified conditions). But those changes have no effect on our jurisdiction here (even if they might do so in other cases). While the Commission developed regulations implementing the EPAct of 2005, *New PURPA Section 210(m) Regulations Applicable to Small Power Prod. & Cogeneration Facilities*, 117 FERC ¶ 61,078 (2006), those regulations, true to the language of new § 210(m) itself, said nothing whatever about disconnections for non-payment of bills.

Further, our prior decisions addressing jurisdiction to review FERC orders under § 210 have repeatedly emphasized Congress's decision to leave § 210's enforcement to the district court (subject to review in the relevant court of appeals). In the first of these, *Industrial Cogenerators v. FERC*, 47 F.3d 1231 (D.C. Cir. 1995), for example, we said:

> The FERC implements § 210 by promulgating rules designed to encourage cogeneration and small power production, 16 U.S.C. § 824a-3(a)-(c); those rules are in turn implemented by state regulatory authorities and by "each nonregulated electric utility." 16 U.S.C. § 824a-3(f). If an entity of either type fails to implement the FERC rules, then the Commission may, upon its own motion or upon petition, bring an enforcement action in district court to ensure compliance with the Act; if the Commission fails to act upon a petition for enforcement, then the petitioner may itself bring such an action. 16 U.S.C. § 824a-3(h)(2)(B). The PURPA does not provide any other means by which the FERC or a petitioner can force a state regulatory authority or a nonregulated utility to comply with § 210 of the Act.

*Id*. at 1232. Throughout the opinion we stressed Congress's decision to vest enforcement of § 210 exclusively in the district court, and rejected any potential interference with that

decision. See *id.* at 1232 (noting, after reciting § 210(h)(2)(B)'s authorization to the Commission, or in default of its action to a disappointed petitioner, to bring an enforcement action in district court, "The PURPA does not provide any other means by which the FERC or a petitioner can force a state regulatory agency authority or a nonregulated utility to comply with § 210 of the Act."), 1234 ("Congress . . . could not have intended that [review under § 313(b)] be available where it would disrupt the enforcement scheme carefully elaborated in § 210. For us to review [the orders before us], however, would be fundamentally inconsistent with—would indeed preempt—that enforcement scheme."), 1235 ("[W]e would think it obvious that the district court is the superior forum in which to address the question whether the [state commission] is in violation of any FERC regulation."). Our later decisions firmly pursue the same understanding. See, e.g., *New York State Elec. & Gas Corp. v. FERC*, 117 F.3d 1473, 1476 (D.C. Cir. 1997) ("Under this enforcement scheme *it is always* the district court that first passes upon the merits of *whatever position* the Commission may take concerning the implementation of the PURPA.") (emphasis added); *Niagara Mohawk Power Corp. v. FERC*, 117 F.3d 1485, 1488 (D.C. Cir. 1997) ("Section 210 sets out a *self-contained* scheme by which the purposes of the PURPA are to be realized.") (emphasis added).

*Industrial Cogenerators* explicitly left open the possibility of direct review in the court of appeals of FERC orders under § 210 that "embody[], for example, a rule of general application, not tied to a particular set of facts . . . ." 47 F.3d at 1236. But in *Niagara Mohawk* we agreed with petitioners that the orders in dispute did "announce a rule of general application," and we then proceeded to answer—negatively—the question left open in *Industrial Cogenerators*: whether Congress had authorized courts of appeal to review such an order. *Niagara Mohawk*, 117 F.3d at 1488. Even in

that context, we believed that the potential for "unnecessary conflict" with the district courts was excessive. *Id*. at 1488-89. Accordingly, even if Midland were right to characterize FERC's action here as having "creat[ed] new rules," the principles of *Industrial Cogenerators* and *Niagara Mohawk* would preclude our review.

We note that on a number of occasions we have in fact directly reviewed FERC decisions under § 210. See *American Forest & Paper Ass'n v. FERC*, 550 F.3d 1179 (D.C. Cir. 2008) (reviewing the 2006 regulations implementing the EPAct of 2005 and finding FERC's interpretation of the statute reasonable); *Greensboro Lumber Co. v. FERC*, 825 F.2d 518 (D.C. Cir. 1987) (concluding that FERC is allowed to review and grant waivers for electric utilities' PURPA obligations); *Ketchikan Elec. Co. v. FERC*, No. 01-1126, 2001 WL 1286293 (D.C. Cir. 2001) (per curiam decision affirming FERC waiver of a utility's purchase obligation under PURPA). In none of them, however, did the court even mention the issue of jurisdiction, and as to jurisdiction, therefore, those cases have no precedential value. *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 69 (1952); *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 352 (D.C. Cir. 2007).

A special characteristic of the orders at issue in *Industrial Cogenerators* and its sequels might serve as a basis for distinction—namely, that the disputed FERC decision was "much like a memorandum of law," see *Industrial Cogenerators*, 47 F.3d at 1235, and "did not "fix[] the rights of any party or, indeed, do[] anything more than state how the FERC interprets its own regulations," *id*. at 1234, and "merely advised the parties of the Commission's position," *id*. at 1235. See also *Niagara Mohawk*, 117 F.3d at 1488 ("An order that does no more than announce the Commission's interpretation of the PURPA or one of the agency's implementing

regulations is of no legal moment unless and until a district court adopts that interpretation when called upon to enforce the PURPA."); *New York State Elec. & Gas Corp.*, 117 F.3d at 1477 (D.C. Cir. 1997) ("[T]he Commission did nothing more than state why in its opinion the challenged rates comply with the PURPA . . . . [We lack jurisdiction] to review a non-binding declaratory order . . . ."); *Connecticut Valley Elec. Co. v. FERC*, 208 F.3d 1037, 1043 (D.C. Cir. 2000) ("The Commission has in effect merely 'announced the position . . . it would take in any future enforcement action that [Connecticut Valley] might bring . . . .'") (citing *New York State Elec.*); *Xcel Energy Services Inc. v. FERC*, 407 F.3d 1242, 1244 (D.C. Cir. 2005) (per curiam decision denying review of an order which merely announces FERC's position). Here, Midland is understandably concerned that the disputed orders may in fact be mandatory, in the sense that failure to "comply" could expose it to penalties as high as $1,000,000 a day under FPA § 316A(b), 16 U.S.C. § 825o-1(b). It is conceivable that the principles announced in the *Industrial Cogenerators* line might not apply to orders with such effects. (We note, however, that similar discrepancies between the versions in the U.S. Code and the Statutes at Large, noted in relation to 16 U.S.C. § 825*l*(b), are also found here. Compare 49 Stat. 862 with 16 U.S.C. § 825o (same discrepancy); compare also 119 Stat. 980 with 16 U.S.C. § 825o-1 (Statutes at Large language only reaching orders under "part II" of the FPA, which does not include PURPA § 210).

FERC has, however, manifested no intent that its orders here would be so far out of the line of its ordinary § 210 orders. The initial "ordering paragraph" mentions neither any deadline by which it expected Midland to comply nor any possible consequence of non-compliance. The reasoning in the Order on Rehearing, quoted above, manifested no intent to go beyond a statement of FERC's views of Midland's

obligations. Oral argument tended only to confirm this reading.

> FERC counsel: [T]raditionally, in the PURPA context the Commission would issue a declaratory order and nothing more.
>
> Court: Was it not issuing an order on penalty of contempt?
>
> FERC counsel: The order does not say that. Yes, there's one ordering paragraph that says Midland shall reconnect, it doesn't have a time period by which Midland has to comply, it doesn't say it's under penalty, and in fact, in that same order they are, the Commission is ordering settlement procedures to try to get the parties to work this out.

Oral Arg. Tr. 23. Similarly, FERC counsel said, "[A]ny time FERC orders anyone to do anything[,] that is only enforceable in District Court, the same would be true here." *Id*. at 21. It is true that when asked how a recipient of such an order is "supposed to think," FERC counsel replied, "I would treat it as mandatory, however, they did not seek clarification." But that answer seems no more than a claim of ambiguity, a claim that counsel's other answers suggested should be resolved in favor of treating the order as declaratory only. We cannot imagine that a responsible federal regulatory agency would intentionally expose a party to fines up to $1,000,000 a day on the basis of language that left the agency itself so perplexed. Accordingly we need not now resolve whether such a mandatory order might somehow fall within our jurisdiction.

As the case falls squarely within the principles of *Industrial Cogenerators*, we lack jurisdiction to review the orders. As the parties have neither briefed nor argued the

question of review in the district court under the Administrative Procedure Act, we express no opinion on the subject. Cf. *Niagara Mohawk Power Corp. v. FERC*, 306 F.3d 1264, 1268-69 (2d Cir. 2002) (denying APA review for a *regulated* electric utility on the ground that it could obtain complete relief through proceedings under § 210(h)(2)(B)).

The petition for review is

*Dismissed*.