United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 17, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 04-50807

_____

POWER RESOURCE GROUP, INC.,

Plaintiff - Appellant,

versus

PUBLIC UTILITY COMMISSION OF TEXAS; BARRY T. SMITHERMAN, In
his Official Capacity as Commissioner of the Public Utitlity Commission of Texas;
JULIE PARSLEY, Commissioner of the Texas Public Utility Commission; PAUL
HUDSON, Chairman of the Texas Public Utility Commission,

Defendants - Appellees,

TEXAS NEW MEXICO POWER COMPANY,

Intervenor Defendant - Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas

_____

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this regulatory action, Power Resource Group ("PRG") challenges Texas's implementation

of the Public Utility Regulatory Policies Act of 1978 ("PURPA"). After purchase negotiations

between PRG and Texas New Mexico Power Company ("TNMP") failed, PRG sought to compel

TNMP to purchase power pursuant to a legally enforceable obligation ("LEO") from its still-unbuilt

plant. The Public Utility Commission of Texas ("PUC") determined that because its rules

implementing PURPA provide for a legally enforceable obligation only if a facility is within ninety days of delivering power, TNMP had no obligation to purchase power from PRG. PRG sought relief in Texas courts, which denied its request to overturn the PUC's decision. PRG then brought suit in federal district court, which held that it had jurisdiction only to determine whether the PUC had fully implemented PURPA, and dismissed PRG's remaining claims. Finding that the PUC did, in fact, fully implement PURPA, including providing for the option of a LEO, the district court granted summary judgment in favor of the PUC and TNMP. PRG now appeals. For the reasons that follow, we affirm the judgment of the district court.

## I. FACTS AND PROCEEDINGS

This case concerns Texas's interpretation and implementation of a federal statutory and regulatory scheme governing the contracting for the purchase of energy between public utilities and certain energy production facilities. The facts are not in dispute. Congress enacted PURPA to reduce the dependence of electric utilities on foreign oil and natural gas, in part by encouraging development of alternative energy sources such as cogeneration and small power production facilities ("qualifying facilities" or "QFs"). *Brazos Elec. Power Coop. Inc. v. FERC*, 205 F.3d 235, 237 (5th Cir. 2000); *see also FERC v. Mississippi*, 456 U.S. 742, 745–46 (1982) (citing S. Rep. No. 95-442, p. 9 (1977)). PURPA directs the Federal Energy Regulatory Commission ("FERC") to promulgate regulations that would promote energy purchase from QFs. 16 U.S.C. § 824a-3(a). State regulatory agencies, such as the PUC, are directed to adopt rules which comply with FERC's regulations and implement PURPA. 16 U.S.C. § 824a-3(f). The Texas rule at issue here, PUC Substantive Rule

2

25.242(f)(1)(B),[1] controls when and under what conditions a utility must purchase power from a QF pursuant to a LEO, as opposed to voluntarily contracting with the QF. Rule 25.242(f)(1)(B), or the "90-day rule," provides that a utility may be compelled purchase power from a QF pursuant to a LEO only if the QF can provide that power within 90 days. PUC SUBST. R. 25.242(f)(1)(B).

PRG is a Delaware corporation and an experienced developer of independent power projects. TNMP is a Texas electric utility under the authority of the PUC. Prior to 1995, TNMP contracted with Texas Utilities Electric Company to purchase power. In 1995, TNMP issued a request for proposal for energy to fill its anticipated need for 1999 or 2000. PRG responded to the request, proposing construction of a QF, a natural gas-fired generation facility, to be located in Lewisville, Texas—the Lewisville Power Project. In March of 1996, PRG and TNMP entered into negotiations for the Lewisville Power Project to provide power to TNMP. The Lewisville Power Project was certified as a QF on September 20, 1996 pursuant to 18 C.F.R. § 292.207(a)(1). PRG secured sources of equity, identified a site, held zoning discussions, and undertook various other steps in furtherance of the Lewisville Power Project. On February 13, 1998, PRG made a final written commitment which, it argues, gave rise to a LEO. TNMP then denied the existence of a LEO and refused to execute an agreement with PRG. TNMP instead renegotiated with its previous provider at a rate higher than that offered by PRG.

On August 7, 1998, PRG petitioned the PUC to order TNMP to purchase power from PRG's Lewisville Power Project. On March 25, 1999, the PUC dismissed PRG's petition without prejudice, interpreting the applicable rule, PUC SUBST. R. 25.242(f)(1)(B), such that utilities were required to

---

[1] This Rule was previously codified at PUC SUBST. R. 23.66(d)(1)(C). We refer to the Rule by its current citation, PUC SUBST. R. 25.242(f), or as the "90-day rule."

3

purchase from a QF pursuant to a LEO only if the QF could deliver power within 90 days of notifying the utility that energy would be available. The PUC determined that under Texas law, because PRG's QF was not yet completed and therefore incapable of producing power for delivery within 90 days, a LEO was not created when PRG offered to supply energy to TNMP.

PRG then sought judicial review of the PUC's order in state court in Travis County, Texas. The Travis County District Court affirmed the PUC's final order on March 8, 2001. PRG appealed the ruling to the Third Court of Appeals in Austin. On January 10, 2002, that court affirmed the Texas trial court and the PUC, holding that "the [PUC]'s interpretation of [Rule 25.242(f)(1)(B)] is reasonable and not preempted by federal law and that the [PUC] did not act arbitrarily or capriciously in refusing to compel TNMP to contract with [PRG]." *Power Res. Group, Inc. v. Pub. Util. Comm'n of Tex.*, 73 S.W.3d 354, 363 (Tex. App.-Austin 2002, pet. denied). PRG petitioned for review by the Texas Supreme Court; that petition was denied on October 10, 2002.

PRG then petitioned FERC pursuant to 16 U.S.C. § 824a-3(h)(2)(B), requesting that FERC undertake an enforcement action against the PUC for its failure to implement PURPA's regulatory scheme. After FERC had not acted on PRG's petition for 60 days, PRG filed a complaint in the United States District Court for the Western District of Texas, as authorized under 16 U.S.C. § 824a-3(h)(2)(B) (providing that a United States District Court may "require such State regulatory authority . . . to comply with such requirements [of section 824a-3(f)], and such court may issue such injunctive or other relief as may be appropriate").

The PUC and TNMP, as an intervenor, moved to dismiss PRG's action, arguing that (1) the Rooker-Feldman doctrine barred district court review of PRG's claim because proper review of the federal question was available via a petition for certiorari to the United States Supreme Court; (2)

4

because the Texas state courts had decided the issues presented, *res judicata* and/or collateral estoppel barred the same claims in federal court; (3) PRG had no standing under § 824a-3(h)(2)(B) because it is not a QF; and (4) sovereign immunity barred pursuit of the claim in federal court. PRG responded that Rooker-Feldman, *res judicata*, and collateral estoppel did not apply because federal courts have exclusive jurisdiction over claims under PURPA. It also argued that it was a certified QF and, therefore, had standing, and that the prospective relief it requested was not barred by sovereign immunity.

On February 18, 2004, the district court ruled on the motion to dismiss, denying the motion as to PRG's implementation claim. The district court analyzed the effect of PURPA's unique "multi-layered" enforcement provisions on the defendants' Rooker-Feldman and preclusion arguments. As the district court explained, "[t]he type of claim brought by the petitioner will determine whether state court, FERC or federal district court is the appropriate forum under the statute." *See* 16 U.S.C. § 824a-3(g)–(h). Subsection (g) of § 824a-3 mandates that state courts will review the state rules promulgated to implement PURPA and its associated FERC regulations. *See* 16 U.S.C. § 824a-3(g)(1)–(2); *see also Windway Techs. v. Midland Power Coop.*, 2001 U.S. Dist. LEXIS 3430, at \*14 (N.D. Iowa Mar. 5, 2001). Subsection (h)(1) mandates that FERC regulations promulgated to implement PURPA are to be treated like Federal Power Act ("FPA") rules, which are enforceable by FERC in federal district court. *See* 16 U.S.C. §§ 824a-3(h)(1) and 825m; *see also Windway Techs.* at \*15. Subsection h(2)(A) of PURPA allows FERC to bring an enforcement action against a state regulatory authority such as the PUC or a nonregulated utility in district court. *See* 16 U.S.C. §§ 824a-3(h)(2)(A); *see also Windway Techs.* at \*15. Subsection (h)(2)(B) provides that any utility or qualifying facility may petition FERC to enforce subsection (f), which governs the responsibilities of

5

state regulatory authorities and utilities to implement PURPA and FERC regulations. *See* 16 U.S.C. §§ 824a-3(h)(2)(B); *see also Windway Techs.* at *15. If FERC does not bring an enforcement action within 60 days following the date on which a petition is filed, the utility or qualifying facility may bring an enforcement action in federal district court. 16 U.S.C. §§ 824a-3(h)(2)(B); *Windway Techs.* at *15.

The district court then elucidated the distinction between two types of enforcement claims under PURPA, "as applied" claims and implementation claims: "'An implementation claim involves a contention that the state agency . . . has failed to implement a lawful implementation plan under § 824a-3(f) of the PURPA, whereas an "as-applied" claim involves a contention that the state agency's . . . implementation plan is unlawful, as it applies to or affects an individual petitioner.'" *Power Res. Group, Inc. v. Klein*, No. A-03-CA-762-H, slip op. at 12 (W.D. Tex. Feb. 18, 2004) (quoting *Windway Techs.* at *17). The district court explained that federal district courts only have jurisdiction if the party has first petitioned FERC to bring an enforcement action and FERC failed to do so, and the claim must challenge the state regulations as unlawful implementations of PURPA and FERC regulations. Federal courts may not hear "as applied" claims, because jurisdiction over such claims is reserved to the state courts. *Id.* (citing *Indus. Cogenerators v. FERC*, 47 F.3d 1231, 1234 (D.C. Cir. 1995); *Mass. Inst. of Tech. v. Mass. Dep't of Puc. Utils.*, 941 F. Supp. 233, 236 (D. Mass. 1996); *Greensboro Lumber Co. v. Ga. Power Co.*, 643 F. Supp. 1345, 1374 (N.D. Ga. 1986)).

Federal jurisdiction over implementation claims, the district court held, is exclusive. *Id.* at 13 (citing *Indus. Cogenerators*, 47 F.3d at 1235-36 (D.C. Cir. 1995) ("Congress created in § [824a-3] a complete and independent scheme by which the purposes of the PURPA are to be realized. That scheme involves the promulgation of regulations by the FERC, and their subsequent enforcement

*exclusively in federal district court*, at the insistence of either a private party or of the FERC itself.") (emphasis added)). The court concluded that PRG's implementation claim—that the PUC had failed to implement PURPA by adopting rules which did not give effect to FERC's legally enforceable obligation provision—was under exclusive federal jurisdiction. As such, the court held, this claim is not barred by the Rooker-Feldman or claim preclusion doctrines. The court further held that the implementation claim was not barred by the doctrine of collateral estoppel because PRG had not actually litigated an implementation claim in state court. While PRG did argue to the state court that the 90-day rule conflicted with PURPA, the district court held, this argument amounted to an "as applied" claim, not an implementation claim.

The district court then construed PRG's other claims requesting injunctive relief against the PUC as "as applied" claims and held that they had been determined by the Texas state courts. It concluded that the only issue properly before it was whether the PUC failed to implement PURPA. The court further held that PRG did have standing under § 824a-3(h)(2)(B) because it was a QF, and that the PUC's motion to dismiss on the ground of sovereign immunity was without merit.

On July 15, 2004, the district court issued a memorandum opinion and order on three pending dispositive motions, all centering on one issue: whether in codifying Substantive Rule 25.242(f)(1)(B), the PUC fully implemented the regulations promulgated by FERC pursuant to PURPA. The court held in the affirmative and entered summary judgment in favor of the PUC and TNMP. *Power Res. Group v. Hudson*, No. A-03-CA-762-H (W.D. Tex. July 15, 2004).

PRG timely appealed the district court's determinations (1) that the 90-day rule does not violate PURPA and (2) that the district court lacked jurisdiction to grant relief of PRG's as-applied claims. The PUC and TNMP argue, as an alternative ground upon which this Court could affirm the

7

judgment of the district court, that the district court erred in determining that PRG's claims were not barred by collateral estoppel.

## II. STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment *de novo*. *Smith v. United States*, 391 F.3d 621, 624 (5th Cir. 2004); *see also Indus. Cogenerators v. FERC*, 47 F.3d 1231, 1234 (D.C. Cir. 1995) (explaining that a decision of a district court in an enforcement action brought pursuant to 16 U.S.C. § 824a-3(h)(2)(B) "is reviewable in the court of appeals in the ordinary course").

State regulatory authorities such as the PUC are required to implement PURPA pursuant to the rules and regulations promulgated by FERC. *See* 16 U.S.C. § 824a-3(f). We review the PUC's implementation with deference because "[a] state has broad authority to implement PURPA with respect to the approval of purchase contracts between utilities and QFs." *N. Am. Natural Res., Inc. v. Mich. Pub. Serv. Comm'n*, 73 F. Supp. 2d 804, 807 (D. Mich. 1999) (*citing Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 135 (3d Cir. 1998) ("Though PURPA does limit the authority of state agencies in some respects, e.g., by exempting cogeneration facilities from some regulation, PURPA still provides a substantial role to state agencies in regulating energy contracts between utilities and cogenerators"); *Indep. Energy Producers v. Cal. Pub. Utils. Comm'n*, 36 F.3d 848, 856 (9th Cir. 1994) (noting that "the state's authority to implement [16 U.S.C. § 824a-3] 210 is admittedly broad")).[2]

_____

[2] In *Independent Energy*, the Court of Appeals for the Ninth Circuit ultimately concluded that this authority was limited with respect to the exclusive federal authority to certify QFs. 36 F.3d at 856. The opinion reasoned that subsection (f) of § 824a-3 requires states to implement rules promulgated by FERC pursuant to subsection (a) of § 824a-3. *Id.* Subsection (a), in turn, "provides for rules that require utilities to buy and sell electric energy from cogenerating facilities;

## III. DISCUSSION

### A.

The primary issue before this Court is whether the PUC's rule that a legally enforceable obligation arises only when a qualified facility can deliver power within 90 days runs afoul of PURPA and its associated federal regulations. Pursuant to 16 U.S.C. § 824a-3(a), FERC must promulgate regulations to effectuate PURPA's goal of encouraging the development of cogeneration and small power production facilities. *FERC v. Mississippi*, 456 U.S. at 750–51. In turn, § 824a-3(f) requires state regulatory agencies like the PUC to implement the FERC regulations. *Id*. at 751.

The Supreme Court has held that a state may comply with its obligation to implement PURPA and its associated FERC regulations in one of three ways: "by issuing regulations, by resolving disputes on a case-by-case basis, or by taking any other action reasonably designed to give effect to FERC's rules." *Id.* at 751. Responding to the Court's decision, FERC issued a policy statement in 1983 clarifying that a state may comply with its obligation to implement PURPA "1) through the enactment of laws or regulations at the State level; 2) by application on a case-by-case basis by the State regulatory authority . . . of rules adopted by the FERC; or 3) by any other action reasonably designed to implement [FERC's] rules." *Policy Statement Regarding the Commission's Enforcement Role Under Section 210 of the Public Utility Regulatory Policies Act of 1978*, 23 FERC ¶ 61,304, 1983 WL 39627 (May 31, 1983).

---

it does not deal with the standards under which a cogenerating facility will be considered a qualifying facility." *Id*. Therefore, FERC alone must determine which facilities are QFs. In contrast, the conditions under which a LEO arises are related to the rules requiring utilities to purchase energy from QFs for which the state is given wide discretion. The limitations on a state's discretion to implement PURPA and FERC recognized in *Independent Energy* do not, therefore, apply here.

The FERC regulation that applies to the issue in this case is § 292.304(d), which provides:

Purchases "as available" or pursuant to a legally enforceable obligation. Each qualifying facility shall have

(1) To provide energy as the qualifying facility determines such energy to be available for such purchases, in which case the rates for such purchases shall be based on the purchasing utility's avoided costs calculated at the time of delivery; or

(2) To provide energy or capacity pursuant to a legally enforceable obligation for the delivery of energy or capacity over a specified term, in which case the rates for such purchases shall, at the option of the qualifying facility exercised at the beginning of the specified term, be based on either:

(i) The avoided costs calculated at the time of delivery; or

(ii) The avoided costs calculated at the time the obligation is incurred.

18 C.F.R. § 292.304(d). This provision allows QFs to provide energy to utilities either by entering into a contract or pursuant to a LEO. *See Small Power Prod. and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978*, 45 Fed. Reg. 12,214, 12,224 (Feb. 25, 1980). FERC has explained: "Use of the term 'legally enforceable obligation' is intended to prevent a utility from circumventing the requirement that provides capacity credit for an eligible qualifying facility merely by refusing to enter into a contract with the qualifying facility." *Id*. This requirement is FERC's response to the reluctance of traditional electric utilities to purchase power from nontraditional electric generation facilities, a problem identified by Congress which could hinder the development of such nontraditional facilities. *See Windway Tech*. at 10.

The PUC argues that the 90-day rule properly implements the FERC regulation regarding LEOs. The 90-day rule provides, in relevant part, as follows:

Each electric utility shall purchase energy and capacity from a qualifying facility with a design capacity of 100kw or more within 90 days of being notified by the qualifying facility that such energy and capacity are or will be available, provided that the electric utility has sufficient interconnection facilities available . . . . Nothing in this subsection shall be construed in a manner so as to preclude a qualifying facility from notifying

10

and contracting for energy and/or capacity with a utility prior to 90 days before delivery of such energy and/or capacity.

PUC SUBST. R. 25.242(f)(1)(B). PRG claims that the 90-day rule does not meaningfully implement the FERC regulation's mandate for the option of a legally enforceable obligation. PRG argues that the 90-day rule eviscerates the LEO option for unbuilt QFs, because a new facility cannot be financed and constructed in only 90 days. It claims that denying unbuilt QFs the opportunity "to lock-in a purchase rate prior to the development, financing, and actual construction of the facility, even where the utility has projected a need and the QF can meet that projected need at a rate at or below the utility's avoided cost" denies unbuilt QFs their right to LEOs under PURPA.

PRG has failed to show that PURPA and the FERC regulations mandate that all QFs, including unbuilt ones, must be able to create a LEO at any time. To the contrary, states must provide for legally enforceable obligations as distinct from contractual obligations, but "[i]t is up to the States, not [FERC], to determine the specific parameters of individual QF power purchase agreements, including the date at which a legally enforceable obligation is incurred under State law." *W. Penn Power Co.*, 71 F.E.R.C. ¶61,153, 61,495 (May 8, 1995). *West Penn* and its progeny *Jersey Central Power & Light Co.*, 73 F.E.R.C. ¶61,092, 61,297 (Oct. 17, 1995), and *Metropolitan Edison Co.*, 72 F.E.R.C. ¶61,015, 61,050 (July 6, 1995), support the proposition that the FERC regulations grant the states discretion in setting specific parameters for LEOs.

Certain states may be more generous than Texas toward QFs in their allowance for the creation of LEOs. We agree with the district court's reasoning that the fact that some states have implemented the FERC regulations pursuant to their respective state laws such that a LEO may arise prior to construction of a QF does not compel Texas to do so. Other states have concluded that LEOs did not arise when the QF was not completed. *Compare Armco Advanced Materials Corp.*

11

*v. Pa. Pub. Util. Comm'n*, 579 A.2d 1337 (Pa. Commw. Ct. 1990) (holding that a LEO arises under Pennsylvania law when the QF commits to delivering energy, not at the time of "serious negotiations" between the QF and the facility), *Snow Mountain Pine Co. v. Mauldin*, 734 P.2d 1366, 1371 (Or. Ct. App. 1987) (applying Oregon law and holding that a LEO was created), *A.W. Brown Co., Inc. v. Id. Power Co.*, 828 P.2d 841 (Idaho 1992) (applying Idaho law and holding that a LEO was created), *and N.H. Pub. Util. Comm'n*, 539 A.2d 275 (N.H. 1988) (applying New Hampshire law and holding that a LEO was created), *with Mid-South Cogeneration, Inc. v. Tenn. Valley Auth.*, 926 F. Supp 1327 (E.D. Tenn. 1996) (finding that no LEO arose under Tennessee law for an unbuilt QF), *and S. River Power Partners, L.P. v. Pa. Pub. Util. Comm'n*, 696 A.2d 926, 932 (Pa. Commw. Ct. 1997) (recognizing that Pennsylvania's Public Utility Commission has adopted standards for when a LEO arises that are more stringent than those adopted by other states, and holding that no LEO had arisen under Pennsylvania law). While these cases reach different outcomes on whether LEOs were created, they collectively support the proposition that FERC has given each state the authority to decide when a LEO arises in that state. Therefore, the regulations of other states regarding LEOs have no bearing on the case *sub judice*.

PRG argues that the 90-day rule completely eviscerates the LEO option mandated by the FERC rule, but PRG makes no such showing. On its face, the 90-day rule implements PURPA and its regulations regarding LEOs by allowing QFs to create LEOs and secure pricing based on the LEOs, once the QF notifies the purchasing utility that energy will be available from the QF within 90 days. PURPA allows states discretion in determining when a LEO is created, and Texas's 90-day rule falls within that discretion.

12

PRG points to the Third Circuit's statement that "16 U.S.C. § 824a-3 [of PURPA] requires the FERC to prescribe 'such rules as it determines necessary to encourage cogeneration and small power production,' including rules requiring traditional utilities to purchase electricity from QFs." *Freehold Cogeneration Assocs., L.P. v. Board of Regulatory Comm'rs*, 44 F.3d 1178, 1183 (3d Cir. 1995) (quoting *FERC v. Mississippi*, 456 U.S. 742, 751 (1982)). The ramifications of this proposition, however, are fatal to PRG's position. If FERC had determined it necessary to set more specific guidelines concerning LEOs, it could have done so. For example, the FERC regulations could have mandated that the QFs must be able to lock in purchase rates with a LEO prior to construction of a facility. The plain text of the FERC regulation, however, fails to mandate that requirement. Rather, defining the parameters for creating a LEO is left to the states and their regulatory agencies.

In sum, in codifying Texas Substantive Rule 25.242(f)(1)(B), the PUC acted within its discretion and properly implemented FERC's regulations regarding when a LEO is created. We affirm the decision of the district court granting summary judgment on this issue to the PUC and TNMP.

## B.

PRG also argues that the district court erred in determining that it lacked jurisdiction to grant relief on PRG's as-applied claims. Because we affirm the district court's decision on the 90-day rule issue, the judgment in favor of the PUC and TNMP is upheld and our analysis need go no further.

## C.

Finally, we turn to the argument of the PUC and TNMP that the district court could have dismissed this case on grounds of collateral estoppel. The PUC and TNMP, who come before this

Court as prevailing parties, did not cross-appeal the district court's decision that collateral estoppel did not bar the implementation claim; rather, they merely raise the issue as an alternative ground upon which this Court could affirm the judgment of the district court. In that we deny PRG relief on its appeal of the district court's decision on implementation, we need not address this issue.

## IV. CONCLUSION

Because Texas's 90-day rule regarding LEOs implements PURPA and its associated regulations within the discretion granted to Texas, the decision of the district court granting summary judgment in favor of the PUC and TNMP is AFFIRMED.