FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WINDING CREEK SOLAR LLC,
*Plaintiff-Appellant/*
*Cross-Appellee*,

v.

CARLA PETERMAN; MARTHA
GUZMAN ACEVES; LIANE RANDOLPH;
CLIFFORD RECHTSCHAFFEN;
MICHAEL PICKER, in their official
capacities as Commissioners of the
California Public Utilities
Commission,
*Defendants-Appellees/*
*Cross-Appellants.*

Nos. 17-17531
17-17532

D.C. No.
3:13-cv-04934-
JD

OPINION

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted February 13, 2019
San Francisco, California

Filed July 29, 2019

Before: M. Margaret McKeown, William A. Fletcher,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

## Public Utilities

The panel affirmed the district court's judgment after a bench trial and summary judgment in favor of the plaintiff in an action brought under the Public Utility Regulatory Policies Act against Commissioners of the California Public Utilities Commission.

PURPA requires electric utilities to buy all the power produced by alternative energy generators known as Qualifying Cogeneration Facilities ("QFs") and to pay the same rate they would have if they had obtained that energy from a source other than the QFs. QFs are guaranteed their choice of this "avoided cost" rate as calculated either at the time of contracting or the time of delivery. Plaintiff was a QF that wanted to develop a solar generating facility in California.

To regulate the terms under which electric utilities purchase power from QFs, the CPUC established the Renewable Market Adjusting Tariff ("Re-MAT") program. The panel held that Re-MAT violated PURPA's requirements because it capped the amount of energy utilities were required to purchase from QFs and because it set a market-based rate, rather than one based on the utilities' avoided cost. California did not offer a PURPA-compliant alternative. The panel held that, with no PURPA-compliant program available, PURPA preempted Re-MAT.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel further held that the district court did not abuse its discretion to fashion equitable relief when it declined to award plaintiff its preferred remedy of a particular contract.

## COUNSEL

Eric Lee Christensen (argued), Beveridge & Diamond, Seattle, Washington; Thomas Melone, Allco Renewable Energy Ltd., New York, New York; for Plaintiff-Appellant.

Christine Jun Hammond (argued), Pouneh Ghaffarian, and Arocles Aguilar, California Public Utilities Commission, San Francisco, California, for Defendants-Appellees.

David Bender, Earthjustice, Madison, Wisconsin, for Amici Curiae Montana Environmental Information Center, Idaho Conservation League, and Vote Solar.

Gregory M. Adams, Richardson Adams PLLC, Boise, Idaho; Irion Sanger, Sanger Law PC, Portland, Oregon; for Amici Curiae Community Renewable Energy Association, and Northwest and Intermountain Power Producers Coalition.

## OPINION

McKEOWN, Circuit Judge:

The district court observed that "[d]espite the complex regulatory and factual background" in this case, "the key legal issues turned out to be straightforward." We agree. The result here follows from straightforward application of a handful of regulatory requirements.

The Public Utility Regulatory Policies Act of 1978 ("PURPA"), 16 U.S.C. § 2601 *et seq.*, requires electric utilities to buy *all* the power produced by alternative energy generators known as Qualifying Cogeneration Facilities ("QFs"). 18 C.F.R. § 292.303(a). And it requires these utilities to pay the same rate they would have if they had obtained that energy from a source other than the QFs. 18 C.F.R. § 292.304. QFs are guaranteed their choice of this "avoided cost" rate as calculated either at the time of contracting or the time of delivery. 18 C.F.R. § 292.304(d)(2). Winding Creek Solar LLC is a QF that wants to develop a 1 MW solar generating facility in Lodi, California.

To regulate the terms under which electric utilities purchase power from QFs, the California Public Utilities Commission ("CPUC") established the Renewable Market Adjusting Tariff ("Re-MAT") program. Re-MAT violates PURPA's requirements, because it caps the amount of energy utilities are required to purchase from QFs and because it sets a market-based rate, rather than one based on the utilities' avoided cost. California does not offer a PURPA-compliant alternative. With no PURPA-compliant program available, PURPA preempts Re-MAT.

## BACKGROUND

### I.  THE PUBLIC UTILITY REGULATORY POLICIES ACT

In an effort to reduce American dependence on fossil fuels, Congress enacted Title II of PURPA to facilitate development of alternative energy sources.  PURPA aims to eliminate "(1) the reluctance of traditional electric utilities to purchase power from and sell power to non-traditional facilities, and (2) the financial burdens imposed upon alternative energy sources by state and federal utility authorities."  *Indep. Energy Producers Ass'n, Inc. v. Cal. Pub. Utils. Comm'n (IEP)*, 36 F.3d 848, 850 (9th Cir. 1994).

Congress directed the Federal Energy Regulatory Commission ("FERC") to adopt "such rules as it determines necessary to encourage cogeneration and small power production."  16 U.S.C. § 824a-3(a).  FERC's regulations under PURPA define the criteria for certifying alternative energy producers as QFs.  *IEP*, 36 F.3d at 851; 18 C.F.R. §§ 292.201–.211.  The regulations benefit QFs by requiring utilities to purchase the energy produced by QFs.  *IEP*, 36 F.3d at 851; *see also* 16 U.S.C. § 824a-3(a). Two features of this regulatory scheme are relevant here.

First, the so-called "must take" provision requires utilities to purchase *all* of the energy a QF provides.  The regulations mandate that "[e]ach electric utility shall purchase . . . any energy and capacity which is made available from a qualifying facility . . . [d]irectly to the electric utility."  18 C.F.R. § 292.303(a)(1).

Second, the pricing scheme requires utilities to pay QFs a rate derived from the utility's "avoided costs."  "Avoided costs" are the costs a utility would have incurred but for the purchase from a QF, either by purchasing the energy from

some other source or by generating the energy itself. 18 C.F.R. § 292.101(b)(6). FERC regulations give QFs two options for calculating avoided costs. "[T]he rates for [energy] purchases shall, *at the option of the [QF]* . . . be based on either: (i) [t]he avoided costs calculated at the time of delivery; or (ii) [t]he avoided costs calculated at the time the obligation is incurred." 18 C.F.R. § 292.304(d)(2) (emphasis added). In other words—and key to this appeal— PURPA allows QFs to choose whether the avoided-cost rate a utility pays will be calculated at the time of contracting or the time of delivery.

## II.  CALIFORNIA'S PURPA PROGRAMS

The CPUC implements PURPA programs in California. *Californians for Renewable Energy v. Cal. Pub. Utils. Comm'n*, 922 F.3d 929, 931 (9th Cir 2019). In 2012, the CPUC created Re-MAT, one of several California programs regulating the terms of utilities' contracts with alternative energy sources, such as wind farms or solar producers. Re-MAT was intended to establish competitive market-based rates for energy from alternative sources. QFs accepted to Re-MAT are assigned to a queue "on a first-come-first-served basis." Every two months, in what is essentially an auction, the utility serving a given area offers the QFs at the head of the queue contracts at a pre-defined Re-MAT price, which QFs can accept or reject. QFs that reject the contract keep their place in line until the next offering two months later.

Two additional features of Re-MAT are significant here. The amount of energy a utility must buy through Re-MAT is capped. California's three investor-owned utilities are obligated to purchase only 750 MW through Re-MAT statewide. This amount is divided among the utilities according to their customers' share of peak electricity

demand. And each utility is allowed to subtract from its share any generation it is already obligated to purchase under prior CPUC programs. As a result, PG&E, which serves the Northern California area in which Winding Creek is located, is obligated to purchase just 149.848 MW of energy from QFs under Re-MAT. That obligation is then divided equally among three types of generation: "baseload," "non-peaking, as-available," and "peaking, as-available" (which includes solar facilities such as Winding Creek).

Additionally, in any given two-month period, PG&E is obligated to purchase no more than 5 MW from each category of generation. Once PG&E reaches this limit—meaning once purchasing the output of the next QF in line would put it over the 5 MW cap—it can stop offering Re-MAT contracts.

Also significant is the Re-MAT contract price. The CPUC set the initial price at $89.23/MWh for peaking as-available facilities like Winding Creek. Every two months this price adjusts up, down, or stays the same based on QFs' willingness to accept the prior offer price. If QFs will not supply at least 1 MW to the regional utility, and there are at least five unaffiliated QFs in the queue, the next contract price adjusts up. If QFs supply at least 5 MW at the previous offer price, the price adjusts down. And if QFs supply between 1 and 5 MW at the offer price, or there are fewer than five unaffiliated QFs in the queue, the price remains the same. The price adjustment follows a formula set by the CPUC.

The CPUC administers another PURPA program, the Standard Contract, which is available as an alternative to Re-MAT. *See Winding Creek Solar LLC*, 153 FERC ¶ 61027, 2015 WL 6083932 (Oct. 15, 2015). The Standard Contract does not cap the amount of energy a utility is obligated to

buy. The Standard Contract offers an avoided-cost rate, calculated using a six-variable formula. However, three of the six variables (burner tip gas price, market heat rate, and a location adjustment factor) are impossible to determine at the time of contracting.

## III.    WINDING CREEK'S RE-MAT PARTICIPATION

Winding Creek was accepted into the Re-MAT program, but because it was not placed near the top of the queue, the company did not receive a contract offer at the initial $89.23/MWh price. By the time Winding Creek received a contract offer in March 2014, the price had dropped to $77.23/MWh. Winding Creek rejected this offer and later, lower offers because it could not develop a facility at such a low price.

Winding Creek initially challenged the Re-MAT program before FERC. *See Winding Creek Solar LLC*, 144 FERC ¶ 61122, 2013 WL 4053221 (Aug. 12, 2013); *Winding Creek Solar LLC*, 151 FERC ¶ 61103, 2015 WL 2151303 (May 8, 2015) ; *Winding Creek Solar LLC*, 153 FERC ¶ 61027. After various orders and notices of intent not to act, Winding Creek filed suit in district court. Following a one-day bench trial, the district court granted summary judgment in favor of Winding Creek but declined to grant Winding Creek its preferred remedy: a contract with PG&E at the initial $89.23/MWh price.

## ANALYSIS

We review *de novo* the district court's grant of summary judgment. *FTC v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009). Findings of fact following a bench trial are reviewed for clear error. *See Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), *aff'd* 540 U.S. 644 (2004).

Like the district court, we believe the conclusion to be drawn from this web of regulations is not complicated: California's Re-MAT program violates, and is therefore preempted by, PURPA. *See La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368–69 (1986) (explaining that state regulations that conflict with federal regulations are preempted under the Supremacy Clause).

Re-MAT violates PURPA in two ways. To begin, Re-MAT's cap on the amount of energy utilities must purchase from QFs is impermissible under PURPA's must-take provision. Under Re-MAT, PG&E is required to purchase no more than 5 MW of energy from each of the three categories of alternative energy sources in any two-month period. And each utility must purchase only a fraction of the 750 MW statewide cap from each category of generators. As a result, a utility could purchase less energy than a QF makes available, an outcome forbidden by PURPA. 18 C.F.R. § 292.303(a)(1).

Re-MAT's pricing scheme also runs afoul of PURPA. PURPA requires a utility to pay QFs at an avoided-cost rate: the rate the utility would have incurred obtaining energy from a source other than the QFs. 18 C.F.R. § 292.101(b)(6). True, state agencies may take a variety of factors into account when calculating avoided cost. *See* 18 C.F.R. §§ 292.302(b), 292.304(e). But the Re-MAT price, which is arbitrarily adjusted every two months according to the QFs' willingness to supply energy at the pre-defined price, strays too far afield from a utility's but-for costs to satisfy PURPA.

The CPUC argues that Re-MAT's noncompliance with PURPA is not consequential because QFs may instead sell energy to utilities through the Standard Contract. It is true that FERC has concluded that an alternative program may

exist if a state otherwise satisfies its obligations to QFs under PURPA. *See Winding Creek Solar LLC*, 151 FERC at ¶ 61103 ("[A]s long as a state provides QFs the opportunity to enter into long-term legally enforceable obligations at avoided-cost rates, a state may also have alternative programs that . . . limit how many QFs, or the total capacity of QFs, that may participate in the [alternative] program."). The Supreme Court has recently reiterated when courts must defer to agencies' interpretations of their own regulations. *Kisor v. Wilkie*, — U.S. —, No. 18-15, slip op. at 11–19 (June 26, 2019). But we need not decide if FERC's regulatory interpretation is due deference under *Auer v. Robbins*, 519 U.S. 452 (1997), because, either way, the result is the same.

Even under FERC's interpretation, the Standard Contract cannot save Re-MAT because the Standard Contract also violates PURPA. PURPA mandates that QFs be given a choice between calculating the avoided-cost rate at the time of contracting or at the time of delivery. 18 C.F.R. § 292.304(d)(2). The Standard Contract provides only one formula for calculating avoided cost, and that formula relies on variables that are unknown at the time of contracting. The Standard Contract violates PURPA because it fails to give QFs the option to calculate avoided cost at the time of contracting. This infirmity is plain from the face of the regulations, so we do not defer to FERC's unreasoned conclusion to the contrary. *See Kisor*, slip op. at 13, 17 (holding that *Auer* deference is only appropriate if the regulation being interpreted is "genuinely ambiguous" and the agency's interpretation "reflect[s] fair and considered judgment" (internal quotation marks omitted)).

The bottom line is that two wrongs don't make a right. Because neither option offered by the CPUC is PURPA-

compliant, California's regulatory scheme is preempted by federal law.

Finally, the district court did not abuse its broad discretion to fashion equitable relief by declining to grant Winding Creek a contract with PG&E at the initial $89.23/MWh price. *See Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro. Transp. Auth.*, 263 F.3d 1041, 1048 (9th Cir. 2001). Indeed, it would be inappropriate to order a non-party to contract with Winding Creek under a modified version of the very program the court had just determined to be preempted by federal regulation. It is not the court's job to fashion a new contract to Winding Creek's liking. *See Allco Renewable Energy Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 74 (1st Cir. 2017) (noting that federal courts are neither statutorily authorized nor competent to set avoided-cost rates).[1]

**AFFIRMED.**

---

[1] The CPUC's unopposed motion for judicial notice (Dkt. 47) is **GRANTED**.